# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**16-973**



RHONDA TIMBERLAKE

VERSUS

CHRISTUS HEALTH CENTRAL LOUISIANA
D/B/A CHRISTUS ST. FRANCES CABRINI HOSPITAL



**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 15-07478
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**AFFIRMED IN PART; REVERSED IN PART;
AND RENDERED.**

**John C. Turnage**
**Mayer, Smith & Roberts, L.L.P.**
**1550 Creswell Avenue**
**Shreveport, LA 71101**
**(318) 222-2135**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    **Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini Hospital**

**Maria A. Losavio**
**Losavio Law Office, LLC**
**1821 MacArthur Drive**
**Alexandria, LA 71315**
**(318) 767-9033**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
    **Rhonda Timberlake**

**PICKETT, Judge.**

An employer appeals a judgment granting its former employee's requests for surgery, penalties, and attorney fees for the employer's failure to approve the requested surgery and to timely pay one week of indemnity benefits. For the following reasons, we affirm in part, reverse in part, and award additional attorney fees for work performed by the employee's attorney on appeal.

## FACTS

On March 30, 2010, Rhonda Timberlake, a registered nurse employed at Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini Hospital (Cabrini) in the intensive care unit, claimed that she injured her left wrist and forearm while repositioning a patient. Cabrini is self-insured; it contracts with F. A. Richard & Associates, Inc. (FARA), a third-party administrator, to manage its claims. Previously, the parties appeared before this court to address issues pertaining to supplemental earnings benefits, temporary total disability benefits, penalties, and attorney fees. *See Timberlake v. Christus Health Cent. La.*, 13-166 (La. App. 3 Cir. 10/30/13), 124 So.3d 1201.

Rhonda continued seeking medical treatment for issues associated with her injury, and on May 17, 2016, the parties tried the following issues to the workers' compensation judge (WCJ) pursuant to an LDOL-WC-1008 filed by Rhonda: 1) did the Medical Director err in denying Rhonda's request for surgery; 2) was Cabrini's late payment of indemnity benefits excusable; and 3) was Rhonda entitled to awards for penalties and attorney fees? The WCJ granted Rhonda the relief she sought, and Cabrini filed this appeal.

The following events led Rhonda to file her LDOL-WC-1008. Beginning in March 2011, Rhonda was treated by Dr. Robert Morrow, an orthopedic surgeon,

who specializes in hands and upper extremities. *See Timberlake*, 124 So.3d 1201. Dr. Morrow performed three surgeries on Rhonda's left upper extremity. He retired in 2015, and the record indicates that Rhonda's last appointment with him was in March 2015. Rhonda has also been treated by pain management doctors and psychologists for pain-related issues.

On June 8, 2015, Rhonda underwent an independent medical examination (IME) performed by Dr. Gary Porubsky, an orthopedic surgeon, who also specializes in hands and upper extremities. Dr. Porubsky opined in his report that Rhonda had reached maximum medical improvement and should be able to perform light/sedentary work; however, he recommended that a functional capacity examination be performed to determine exactly what work she could perform.

In October 2015, Rhonda began seeing Dr. Darrell Henderson, a plastic surgeon. Like Drs. Morrow and Porubsky, Dr. Henderson specializes in treating hands and upper extremities. After examining Rhonda, performing x-rays, and reviewing her medical history, Dr. Henderson recommended that she undergo a left radical carpal fusion, Watson distal ulnar re-contouring and insertion of EBI, which is a partial fusion of the wrist. On October 16, 2015, Dr. Henderson submitted a LDOL-WC-1010, seeking authorization for the partial fusion. Cabrini then ordered a utilization review (UR).

On October 22, 2015, the physician who performed the UR recommended certification of the surgery. In his report, the physician noted that the surgery was not covered in Louisiana's Medical Treatment Guidelines and then addressed the surgery request by performing an extensive review of medical treatment guidelines adopted by other states, as contemplated by La.R.S. 23:1203.1(D)(5), that apply to the procedures recommended by Dr. Henderson. The physician also cited pertinent

2

medical review articles that discussed the efficacy of the recommended procedures. That same day, FARA approved the surgery with modifications recommended by the UR physician, and Dr. Henderson was notified of the approval. On October 27, 2015, the UR physician reversed his initial recommendation and recommended that the surgery not be approved. FARA notified Dr. Henderson the surgery was denied. No explanation was given at that time for the reversal.

After being asked for an explanation for his reversal, the UR physician explained that he reversed his opinion and withdrew his initial recommendation for certification of the surgery because he initially considered his review as presenting a "tie" situation between the treating physician and the IME physician. He reviewed the medical evidence again and concluded that he had not given enough weight to the IME's opinion. The physician then stated that the IME's opinion shifted his determination from a tie to the conclusion that the weight of the evidence warranted non-certification.

Rhonda filed an LDOL-WC-1009, seeking the Medical Director's approval of the surgery. On February 26, 2016, the Medical Director denied the surgery, stating that the requested surgery required a variance from Medical Treatment Guidelines, but the variance was not addressed by Dr. Henderson's request and that no medical literature regarding the surgery was included with the request. Rhonda filed an LDOL-WC-1008.

Following his review of the matter, the WCJ issued thorough Reasons for Ruling in which he concluded that the Medical Director erred in denying Dr. Henderson's request for approval of his recommended surgery. The WCJ specifically addressed the Medical Director's finding that documentation required for the requested variance was not included with Dr. Henderson's request, noting

that the cited documentation and medical literature was outlined and discussed in the UR physician's initial report. Furthermore, the WCJ observed that although the UR physician stated he did not give proper weight to Dr. Porubsky's opinion, he did not explain why his previous assessment under the cited guidelines and medical literature was incorrect or irrational. The WCJ also noted that Dr. Porubsky's IME of Rhonda occurred before Dr. Henderson recommended surgery; therefore, his report did not address the recommended surgery.

Addressing Rhonda's claim for penalties and attorney fees for Cabrini's failure to approve the recommended surgery, the WCJ observed that Cabrini made no showing that the disability guidelines cited by the UR physician do not meet the five criteria outlined in La.R.S. 23:1203.1(D) for the Louisiana Treatment Schedule and concluded that Cabrini had no "reasonable basis" for denying the surgery because it "failed in [its] duty to properly investigate" the request for surgery and "discounted competent medical evidence from the UR [physician]." He awarded a $2,000.00 penalty for Cabrini's failure to approve the surgery and $9,000.00 in attorney fees for Rhonda's prosecution of her claim.

Rhonda also alleged that Cabrini failed to pay timely her indemnity benefits owed for the week of September 30 through October 6, 2015, when it issued her one check for the period September 30 through October 13, 2015, and that it terminated her benefits. FARA's claims representative handling this matter countered Rhonda's claim that her benefits were terminated, and a joint stipulation resolved the issue.

Cabrini contends that Rhonda's indemnity benefits were paid bi-weekly, that the check representing the benefits in question was received three days after it was due, that the maximum penalty due Rhonda was $150.00 which represents the

4

$50.00 per day penalty provided in La.R.S. 23:1201(F), and that it included payment of the penalty with the late check.

The WCJ reviewed the documentation submitted in conjunction with the claim and determined that the payment at issue was six days late, not three days late. He awarded a penalty of $50.00 per day for six days for the late payment and $500.00 in attorney fees.

## ASSIGNMENTS OF ERROR

Cabrini filed a suspensive appeal and assigns two errors with the WCJ's judgment:

1. The Trial Court erred in finding that there was clear and convincing medical evidence to show that Rhonda [] was entitled to the surgery recommended by Dr. Darrell Henderson;

2. The Trial Court erred in finding that [it] was arbitrary and capricious and awarding [Rhonda] penalties, attorney[] fees[,] and costs.

## DISCUSSION

Appellate courts review workers' compensation matters pursuant to the manifest error or clearly wrong standard of review. *Bruno v. Harbert Int'l Inc.,* 593 So.2d 357 (La.1992). This standard of review precludes an appellate court from setting aside a trial court's finding of fact in the absence of a manifest error or unless it is clearly wrong. *Rosell v. ESCO,* 549 So.2d 840 (La.1989); *Stobart v. State, DOTD,* 617 So.2d 880 (La.1993). In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Id.*

5

*Surgery*

The Medical Director's decision can only be overturned when clear and convincing evidence shows that the decision was not in accordance with the provisions of La.R.S. 23:1203.1. La.R.S. 23:1203.1(K). To prove a matter by clear and convincing evidence requires a showing that "the existence of the disputed fact is highly probable; that is, much more probable than its nonexistence." *Johnson v. Temple-Inland*, 95-948, p. 7 (La.App. 3 Cir. 1/31/96), 670 So.2d 388, 392, *writ denied*, 96-544 (La. 4/19/96), 671 So.2d 919.

The UR physician performed his review of the request for surgery based on Rhonda's complaints and her medical records. He noted that "Louisiana Guidelines do not address this request[,]" then addressed the issue of a variance as contemplated by La.R.S. 23:1203.1(I). The UR physician identified and discussed other disability guidelines that address the procedures Dr. Henderson requested approval to perform. He also cited and discussed current medical literature on the procedures. The UR physician determined that the requested surgery fell within the parameters of other treatment guidelines and current medical literature. He made no indication in his review that he gave more weight to Dr. Henderson's opinion or Dr. Porubsky's opinion.

The Medical Director denied Dr. Henderson's request for approval of his proposed surgery, stating the request "require[d] a variance" from the medical treatment guidelines, but "current medical literature [did not] accompany the request." Based on the extensive findings set forth in the UR, the WCJ concluded that the Medical Director's reason for denying Dr. Henderson's request did not exist when he denied the request. Having carefully reviewed the record, we cannot say the WCJ committed manifest error in concluding that Rhonda proved by clear

6

and convincing evidence that the Medical Director's denial of her request for surgery was unsubstantiated.

Cabrini argues the WCJ erred because the UR physician reversed his initial opinion to recommend denial of the surgery request after reconsidering the medical evidence and because the IME opinion was court ordered; therefore, it must be given more weight than Dr. Henderson's opinion. The WCJ correctly noted that, an IME is not ordered by the court but by the director of the Office of Workers' Compensation. La.R.S. 23:1123. As argued by Cabrini, an IME's medical opinions and conclusions constitute "prima facie evidence of the facts therein," La.R.S. 23:1123, and jurisprudence has held that an IME's opinion must be given "significant weight." *Kinard v. New Iberia Wastewater Treatment Facility*, 12-1393, p. 3 (La.App. 3 Cir. 4/3/13), 116 So.3d 5, 8 (quoting *Richardson v. Lil' River Harvesting*, 09-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419). Nonetheless, an IME's opinions are "not conclusive, and the [WCJ] must evaluate all of the evidence presented in making a decision as to a claimant's medical condition." *Id*. For these reasons, we find no error with the WCJ's reversal of the Medical Director's denial of Rhonda's surgery.

We do, however, find error with the WCJ's assessment of a $2,000.00 penalty and award of $9,000.00 in attorney fees to Rhonda. Cabrini argues the WCJ erred in awarding Rhonda a penalty and attorney fees for its failure to approve the surgery. It contends that it's denial of the surgery request was not arbitrary and capricious because the UR physician ultimately recommended non-certification of the request, the Medical Director denied the request, and the IME physician had determined Rhonda did not need additional treatment.

7

Rhonda counters that the WCJ did not err in awarding attorney fees, urging that the UR physician is Cabrini's agent and that Cabrini had him change his opinion. The only evidence on this issue is the UR physician's explanation letter in which he states that he was asked to reconsider his recommendation and that when he reviewed the evidence again, he concluded that he had not given sufficient weight to the IME opinion which changed his opinion. There is no evidence that the UR physician changed his opinion at the instruction of Cabrini as suggested by Rhonda's counsel.

The WCJ found no valid basis for the UR physician's change of opinion because the physician did not discuss Dr. Henderson's findings or Dr. Porubsky's opinions and did not identify any substantive reasons for his change of opinion with regard to the evidence-based guidelines and medical literature that he cited in his initial report. The WCJ also found it important that Dr. Porubsky's IME and opinions pre-dated Rhonda's appointment with Dr. Henderson; therefore, Dr. Porubsky had not considered Dr. Henderson's recommendation and reasons when issuing his opinion.

When considering a claim for penalties and attorney fees, "a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. If the employer presents a "serious defense" in "good faith," penalties and attorney fees should not be awarded. *Savoy v. Cecil Perry Improvement, Co.*, 96-889, p. 17 (La.App. 3 Cir. 2/5/97), 691 So.2d 692, 702.

8

Having considered the record, we find the WCJ committed manifest error in awarding Rhonda penalties and attorney fees for Cabrini's refusal to approve the surgery. Cabrini's refusal was based on the UR physician's amended recommendation, the Medical Director's denial of Rhonda's request to approve the surgery, and Dr. Porubsky's IME report. As noted above, there is no evidence the UR physician changed his opinion at Cabrini's direction. Furthermore, while Dr. Porubsky's opinion pre-dated Dr. Henderson's examination of Rhonda and recommendation for the requested surgery, it was not the sole basis for Cabrini's refusal. Accordingly, we reverse the WCJ's awards of a $2,000.00 penalty and $9,000.00 in attorney fees.

### Indemnity Benefits

Cabrini next argues that the WCJ erred in finding that Rhonda's indemnity benefits for the period September 23 through 29, 2015, were paid late and that no valid excuse existed for that delay. Cabrini argues that Rhonda's indemnity benefits were paid bi-weekly and that the check at issue was only three days late.

The WCJ reviewed FARA's check register and found Rhonda's indemnity benefits were paid weekly, except for the week in question. His review shows that on October 12, 2015, one check for the indemnity benefits owed for the week of September 30 through October 6, 2015 *and* the week of October 7 through 13, 2015, was issued to Rhonda. The check register also shows that Rhonda's benefits were paid weekly, not bi-weekly. For these reasons, we find no manifest error with the WCJ's conclusion that Rhonda's indemnity benefits for the week of September 30 through October 6, 2015, were paid six days late, not three days late, as Cabrini argues. Accordingly, the WCJ did not err in finding that the benefits were paid late and that Cabrini's payment of a $150.00 penalty to Rhonda with the

9

late benefits was insufficient. For these reasons, the WCJ was also correct in awarding Rhonda an additional penalty of $150.00 and $500.00 in attorney fees for Cabrini's failure to timely pay her indemnity benefits for the week of September 30 through October 6, 2015.

***Attorney Fees on Appeal***

Rhonda answered Cabrini's appeal, seeking an award of additional attorney fees for worked performed by her attorney defending the WCJ's judgment on appeal. We award $5,500.00 for the work performed by Rhonda's attorney on appeal with regard to the WCJ's findings that Rhonda is entitled to have surgery and Cabrini's late payment of indemnity benefits.

## DISPOSITION

The judgment in favor of Rhonda Timberlake against Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini Hospital is affirmed with regard to the surgery request and the award of an additional $150.00 penalty and $500.00 in attorney fees associated with the late payment of indemnity benefits. The WCJ's awards of a $2,000.00 penalty and $9,000.00 in attorney fees for Cabrini's refusal to approve the surgery request are reversed. Attorney fees in the amount of $5,500.00 are awarded to Rhonda Timberlake for work performed on appeal by her attorney. All costs totaling $1,030.25 are assessed against Christus Health Central Louisiana d/b/a Christus St. Frances Cabrini Hospital.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**