# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-469


LEE ANN BROUSSARD

VERSUS

ACADIAN AMBULANCE SERVICE, INC., ET AL.



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 4
PARISH OF LAFAYETTE, NO. 14-03170
ANTHONY P. PALERMO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, D. Kent Savoie, and Van H. Kyzar, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**K. Wade Trahan**
**Ottinger Hebert, L.L.C.**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Acadian Ambulance Service, Inc.**
**SeaBright Insurance Company**

**Janice H. Barber**
**Jennifer B. Valois**
**Barber Law Firm**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 232-9893**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Lee Ann Broussard**

**SAVOIE, Judge.**

Acadian Ambulance Service, Inc. and Seabright Insurance Company (collectively "Acadian") appeal the judgment of the Workers' Compensation Judge (WCJ) that found in favor of Lee Ann Broussard (Broussard). Broussard answered the appeal, requesting additional attorney's fees for work done on appeal. For the following reasons, we affirm in part, reverse in part, and decline to award additional attorney's fees for work performed by Broussard's attorney on appeal.

### FACTS AND PROCEDURAL HISTORY

Broussard's injury occurred when she tripped over two boxes at her place of employment, the Acadian Ambulance office, on May 25, 2012. She used both of her hands to break the fall and landed on her knees. Broussard saw Dr. Robby LeBlanc, an orthopedic surgeon, for the injuries to her hands. After treating her with splints and injections, Dr. LeBlanc ultimately performed two de Quervain's surgical releases on Broussard. The first surgical release was to her right hand on March 7, 2013. The second release to her left hand occurred on August 8, 2013. Acadian paid medical and wage benefits to Broussard until they were terminated after the second surgery.

Broussard filed a Disputed Claim for Compensation on May 12, 2014, requesting: (1) reinstatement of benefits; (2) treatment for pain management; (3) her choice of physician, Dr. Joseph Bozelle, Jr.; and (4) penalties and attorney's fees. Acadian argued that Broussard reached maximum medical improvement and was, therefore, released to full duty.

At trial, the parties stipulated to the following facts:

1. Broussard was employed by Acadian at the time of her accident on May 25, 2012.

2. Broussard sustained injuries in an accident on May 25, 2012, while in the course and scope of her employment with Acadian.

3. Broussard's average weekly wage was $645, which resulted in a temporary total disability benefit (TTD) of $435 per week.

4. Dr. Robby LeBlanc was Broussard's choice of orthopedic surgeon.

5. Dr. LeBlanc performed a right de Quervain's release on Broussard on March 7, 2013, and this surgery was causally related to the May 25, 2012 accident.

6. Dr. LeBlanc performed a left de Quervain's release on Broussard on August 8, 2013, and this surgery was causally related to the May 25, 2012 accident.

7. The last TTD check issued to Broussard covered the time period between September 5, 2013 and October 2, 2013.

8. Broussard requested a referral from Dr. LeBlanc to pain management on October 18, 2013.

9. On October 18, 2013, Dr. LeBlanc did not recommend chronic pain management, and he felt Broussard was at maximum medical improvement.

10. A demand letter was sent to SeaBright Insurance Company on November 4, 2013, requesting authorization for pain management treatment.

11. The pain management treatment was denied via letter dated November 7, 2013.

12. Broussard underwent a court-appointed independent medical examination with Dr. Darrel Henderson on October 28, 2015.

13. Broussard requested a change of orthopedic surgeon to Dr. Darrel Henderson by letter on December 1, 2015.

14. Broussard did not receive a response to the December 1, 2015 request for change of orthopedic surgeon.

After hearing the evidence produced at trial, the WCJ made the following findings in his oral reasons:

> [T]he Court finds that Lee Ann Broussard was injured in an accident in the course and scope of employment on May 25, 2012. In that accident, she injured her wrist and her thumb.
>
> The Court finds that the problems with her thumb are causally related to the accident. While she has received a diagnosis of basilar thumb arthritis, Ms. Broussard did not have any significant issues with

2

her thumbs until the accident occurred. There's been no showing that she had prior problems with her thumbs.

Therefore, the Court finds that there has, at the very least, been an exacerbation of her pre-existing condition. The Court therefore awards medical benefits to Lee Ann Broussard for the basilar thumb arthritis.

Ms. Broussard has requested reinstatement of the indemnity benefits. Pursuant to the medical records received by the Court, the Court awards temporary total disability benefits from October 2, 2013, through August 1, 2014. In August of 2014, Ms. Broussard began to do work. At that point in time, because she was able to do some work in her field of expertise, she would then be owed supplemental earnings benefits. The Court finds that Ms. Broussard is entitled to supplemental earnings benefits from August 1, 2014, through the date of trial.

The Court further finds that claimant is entitled to the medical expenses with Dr. Bozelle. The issue in this case was whether pain management was needed. After a review of the entire medical records, it is clear that even though Dr. Robby LeBlanc did not recommend pain management to Ms. Broussard, he continued to prescribe pain medication to her after he released her to return to work and basically released her from his care. Therefore, it's obvious that her treating physician at the time was aware of the fact that further pain medication was needed; and therefore, it was logical to conclude that pain management also would have been necessary.

Therefore, the Court finds that the medical expenses incurred by Lee Ann Broussard from Dr. Bozelle are to be paid for by the defendant.

The Court further finds that Ms. Broussard is entitled to her choice of pain management doctor. The Court awards the outstanding medical expenses to Lee Ann Broussard.

The other question that arose was whether Ms. Broussard was entitled to a change of physician. After reviewing Dr. LeBlanc's records, it's important to note that Dr. LeBlanc was the first physician to identify the basilar thumb arthritis. Yet, a review of Dr. LeBlanc's records show[s] that Dr. LeBlanc did not do much to address the complaints that were coming from Ms. Broussard with regards to her thumbs. Dr. LeBlanc performed [de Quervain's] releases, which were very successful according to Ms. Broussard.

However, there was ongoing complaints with regards to the basilar thumb symptoms. Dr. LeBlanc noted that surgery might by necessary. However, outside of noting that, nothing much was done to address the thumb complaints outside of prescribing medication, and then Dr. LeBlanc released her.

3

The Court therefore finds that because Dr. LeBlanc basically released her from his care without addressing the basilar thumb injuries, that Ms. Broussard is entitled to change her physician to Dr. Darrel Henderson and to continue treatment with him.

Therefore, the Court awards indemnity benefits as specified previously and medical benefits as specified previously to Ms. Brousard.

The next question that arises is whether penalties and attorney's fees are appropriate in this case.

The Court finds that the medical evidence does not warrant the termination of the claim by the defendant and therefore awards Two Thousand Dollars for the termination of the benefits.

The Court further finds that reliance on the medical in their possession and failing to approve medical treatment with Dr. Bozelle was arbitrary and capricious and awards a Two Thousand Dollar penalty.

The Court also finds that the defendants failed to reasonably controvert the request for a choice of pain management physician and awards a Two Thousand Dollar penalty.

The Court further finds that based on the attorneys' skill and experience and work in this case, that an attorneys' fee of Six Thousand Dollars is appropriate and therefore awarded.

Acadian now appeals this judgment, asserting the WCJ's ruling was in error and should be overturned. Broussard answered Acadian's appeal, requesting additional attorney's fees for work done on appeal.

## ASSIGNMENTS OF ERROR[1]

---

[1] We note that, on page five of Appellants' Original Brief, the second assignment of error states "The OWC erred in concluding Appellants improperly terminated Appellee's worker's compensation benefits and in reinstating said benefits." This assignment was not addressed in the original brief. Broussard noted this in her brief to the court, stating it was unclear whether the Appellants intended to discuss this as a consolidated argument with the assignment of error regarding pain management. Broussard, out of an abundance of caution and for completeness, discusses them separately. In its Reply Brief, Appellants' state "Appellee erroneously identifies the reinstatement of benefits as Appellants' second assignment of error." However, as stated previously, it is clearly identified as Appellants' assignment of error number two on page 5 of its original brief. Appellants' go on to state that "in the event this court should conclude a reversal as to the pain management issue is warranted, then, in that event, logically the reinstatement of benefits by WCJ should be reversed as well." Based on that statement, we will not discuss the reinstatement of benefits by the WCJ as a separate assignment of error.

4

1. The [WCJ] erred in finding that [Broussard] was entitled to pain management treatment.

2. The [WCJ] erred in enabling [Broussard] to change her choice of physician in orthopedic surgery.

3. The [WCJ] erred in awarding penalties and attorney's fees.

## LAW AND DISCUSSION

### I. Standard of Review

In workers' compensation cases, we apply a manifest error standard of review to the factual findings of the WCJ. *Meche v. Gray Ins. Co.*, 15-465 (La.App. 3 Cir. 11/12/15), 178 So.3d 640. "When reviewing a WCJ's findings of fact, appellate courts do not review the findings of fact to determine whether they are right or wrong but whether they are reasonable based on the record." *Simmons v. LUBA Workers' Comp.*, 16-523, p. 3 (La.App. 3 Cir. 11/2/16), 206 So.3d 397, 401. The WCJ's findings will not be disturbed "as long as they are reasonable and supported by the record." *Gibson v. Resin Sys., Inc.*, 15-299, p. 2 (La.App. 3 Cir. 10/7/15), 175 So.3d 1141, 1143. "Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous." *Ardoin v. Firestone Polymers, L.L.C.*, 10-245, p. 6 (La. 1/19/11), 56 So.3d 215, 219.

### II. Assignment of Error Number One

Acadian argues that Broussard's pain management treatment was not medically necessary, and, as a result, its termination of benefits was proper.

Louisiana Revised Statutes 23:1203(A) provides, in pertinent part:

> In every case coming under this Chapter, the employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment recognized by the laws of this state as legal, and shall utilize such state, federal, public, or private facilities as will provide the injured employee with such necessary services.

5

After reporting her injury, Broussard selected Dr. LeBlanc as her physician of choice. He diagnosed and treated Broussard for de Quervain's tenosynovitis, and he also diagnosed her with bilateral basilar arthritis in both wrists. Dr. LeBlanc found that Broussard had reached maximum medical improvement on October 18, 2013, and he released her from his care. However, Broussard continued to complain of pain in her wrists. Even though Dr. LeBlanc had released her from his care, he ordered additional pain medication for Broussard in December 2013, due to her complaints. At this point, Broussard began to see Dr. Bozelle, a local pain management physician. After consulting with Dr. LeBlanc, who determined that pain management was not medically necessary, Acadian denied Broussard's request for these services.

Dr. Bozelle initially evaluated Broussard on November 20, 2013. He found decreased range of motion in both wrists, finding the left wrist to be worse than the right. He also found edema in the hand. Dr. Bozelle prescribed medication and ordered occupational therapy. He treated Broussard a total of seventeen times over the course of two years.

Prior to trial, the WCJ ordered an independent medical examination of Broussard. Dr. Darrell Henderson, a plastic surgeon practicing in Lafayette, Louisiana, was appointed to examine Broussard, and he determined that pain management was medically necessary. His supplemental report of March 1, 2016, states:

> It is my opinion that Ms. Broussard needs to have continuation of this pain management treatment and therapy until such time she can have surgery to both of her hands as outlined in my report. Repair of the torn intermetacarpal ligaments between the base of the thumb and the base of the index finger should markedly reduce her pain, and once she has achieved success by this surgery, her pain management should be able to be stopped.

6

In *Timberlake v. Christus Health Central Louisiana*, 16-973, p. 7 (La.App. 3 Cir. 5/24/17), 221 So.3d 284, 288 (alteration in original), this court explained

> [A]n IME's medical opinions and conclusions constitute "prima facie evidence of the facts therein," La.R.S. 23:1123, and jurisprudence has held that an IME's opinion must be given "significant weight." *Kinard v. New Iberia Wastewater Treatment Facility*, 12-1393, p. 3 (La.App. 3 Cir. 4/3/13), 116 So.3d 5, 8 (quoting *Richardson v. Lil' River Harvesting*, 09-1090, p. 2 (La.App. 3 Cir. 3/10/10), 33 So.3d 418, 419). Nonetheless, an IME's opinions are "not conclusive, and the [WCJ] must evaluate all of the evidence presented in making a decision as to a claimant's medical condition." *Id.*

After evaluating all of the evidence presented, we cannot say that the WCJ committed manifest error in finding that Broussard's pain management treatment was medically necessary. Although Dr. LeBlanc released Broussard from his care, he continued to prescribe pain medication to her after the release. It is clear from the records of Dr. Bozelle and the independent examination of Dr. Henderson that pain management for Broussard is needed. As such, this assignment is without merit.

III. *Assignment of Error Number Two*

Acadian next complains that the WCJ erred in allowing Broussard to change her choice of physician in orthopedic surgery.

Louisiana Revised Statutes 23:1121(B)(1) provides:

> The employee shall have the right to select one treating physician in any field or specialty. . . . After his initial choice the employee shall obtain prior consent from the employer or his workers' compensation carrier for a change of treating physician within that same field or specialty. The employee, however, is not required to obtain approval for change to a treating physician in another field or specialty.

The parties stipulated that Broussard sent a letter to Acadian requesting a change of orthopedic surgeon from Dr. LeBlanc to Dr. Henderson on December 1, 2015. It was further stipulated that Acadian did not respond to this request. Acadian complains about the timing of the request and argues that it amounts to

7

"doctor shopping." Acadian again relies on the opinion of Dr. LeBlanc, who they argue is more qualified than Dr. Henderson.

The WCJ found that it was "important to note that Dr. [LeBlanc] was the first physician to identify the basilar thumb arthritis." However, he did nothing to address her complaints regarding Broussard's thumbs. He did note that surgery may be necessary, but, other than prescribing pain medication, the thumb complaints were not addressed. The WCJ found that because Dr. LeBlanc released Broussard without "addressing the basilar thumb injuries," Broussard was entitled to change her physician.

In *Dawson v. Terrebonne General Medical Center*, 10-2130 (La.App. 1 Cir. 5/19/11), 69 So.3d 622, the first circuit affirmed a change of orthopedists. In that case, the claimant felt that his original doctor was no longer working in his best interest and went to someone else. The appellate court found that the WCJ did not err in concluding that the original doctor "basically refused to treat [claimant] further and effectively 'passed it off.'" *Id.* at 629.

In the instant case, we find no error in the WCJ's allowing Broussard to change her orthopedic surgeon. The WCJ found Broussard's complaints regarding her thumbs, specifically the basilar thumb arthritis, were not addressed by Dr. LeBlanc. Dr. LeBlanc released Broussard, and her only option was to find another doctor who would treat her. This assignment lacks merit.

*IV. Assignment of Error Number Three*

Acadian next argues that the WCJ erred in awarding Broussard penalties and attorney's fees. Broussard was awarded a $2,000 penalty for Acadian's improper termination of benefits, a $2,000 penalty for Acadian's failure to approve medical treatment with Dr. Bozelle, and another $2,000 penalty for Acadian's failure to reasonably controvert the request for a choice of pain management physician. The

8

WCJ also awarded Broussard $6,000 in attorney's fees. Acadian contends that its actions were not arbitrary and capricious because it relied on the opinions of Dr. LeBlanc.

In its oral ruling, the WCJ found that "the medical evidence [did] not warrant the termination of the claim by the defendant." The WCJ also determined that based on the medical evidence in its possession, failure to approve pain management treatment with Dr. Bozelle was arbitrary and capricious.

> When considering a claim for penalties and attorney fees, "a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown v. Texas–LA Cartage, Inc.*, 98-1063, p. 9 (La. 12/1/98), 721 So.2d 885, 890. If the employer presents a "serious defense" in "good faith," penalties and attorney fees should not be awarded. *Savoy v. Cecil Perry Improvement, Co.*, 96-889, p. 17 (La.App. 3 Cir. 2/5/97), 691 So.2d 692, 702.

*Timberlake*, 221 So.3d at 289.

After a review of the record, we find the WCJ committed manifest error in awarding penalties and attorney's fees to Broussard. Acadian's refusal was based on Dr. LeBlanc's release of Broussard and his opinion that she reached maximum medical improvement. Therefore, Acadian possessed medical information to reasonably counter Broussard's claims. The WCJ's judgment awarding penalties and attorney's fees to Broussard is reversed.

V. *Broussard's Answer to Appeal*

Broussard filed an answer to the instant appeal seeking attorney's fees incurred for work performed in connection with the defense of this appeal. Having concluded above that the WCJ erred in awarding penalties and attorney's fees, there is neither a statutory or contractual basis for an award of attorney's fees to Broussard for this appeal nor are they necessary in order to be consistent with the

judgment below. *See Robinson v. Calcasieu Par. Sch. Bd.*, 11-615 (La.App. 3 Cir. 11/2/11), 77 So.3d 1059, 1064, *writ denied*, 11-2641 (La. 2/10/12), 80 So.3d 478. Accordingly, we deny Broussard's request for attorney's fees for work done on appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the WCJ awarding $6,000 in penalties and $6,000 in attorney's fees to Lee Ann Broussard is reversed. The WCJ's judgment in favor of Lee Ann Broussard and against Acadian Ambulance Service, Inc. and SeaBright Insurance Company is affirmed in all other respects. Lee Ann Broussard's Answer to Appeal requesting additional attorney's fees for work done on appeal is denied. All costs of these proceedings are assessed to Acadian Ambulance Service, Inc. and SeaBright Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**